**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-4499 and 11-4621
_____

UNITED STATES OF AMERICA,

Appellant in No. 11-4499

v.

VINCENT J. FUMO,

Appellant in No. 11-4621
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-06-cr-00319-003)
District Judge: Honorable Ronald L. Buckwalter
_____

Argued December 14, 2012

BEFORE: GREENAWAY, JR., GREENBERG, and COWEN, Circuit Judges

(Filed: February 4, 2013)

John J. Pease, III, Esq.
Robert A. Zauzmer, Esq. (Argued)
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

    Counsel for Appellant in No. 11-4499
    and Appellee in No. 11-4621

Peter Goldberger, Esq. (Argued)
50 Rittenhouse Place
Ardmore, PA 19003

Counsel for Appellant in No. 11-4621
and Appellee in No. 11-4499

_____

OPINION
_____

COWEN, Circuit Judge.

The government and Defendant Vincent J. Fumo challenge, on different grounds, the restitution component of a criminal sentence entered by the United States District Court for the Eastern District of Pennsylvania. This sentence will be affirmed in part and vacated in part. We will affirm the sentence insofar as it increased the restitution amounts that Fumo was required to pay to his victims. We will vacate the sentence insofar as it ordered Fumo to pay only half of the restitution owed to Citizens Alliance for Better Neighborhoods ("Citizens Alliance"). We will also vacate the sentence as to the calculation of prejudgment interest. Finally, we will remand this matter to the District Court with specific instructions to determine Fumo's share of the Citizens Alliance restitution on the basis of the applicable statutory factors as well as the actual evidence in this case and to make a proper prejudgment interest calculation.

I.

Fumo, a former Pennsylvania State Senator, was convicted on 137 counts of fraud, tax evasion, and obstruction of justice. Specifically, he was found guilty of defrauding the Pennsylvania State Senate, Citizens Alliance (a non-profit charitable organization that

2

he founded), and the Independence Seaport Museum ("ISM"). The District Court sentenced him to a term of imprisonment of 55 months, 3 years of supervised release, a $411,000 fine, and a special assessment of $13,700. Furthermore, he was ordered to pay restitution in the total amount of $2,340,839.46. Based on its loss calculations under the Sentencing Guidelines (as adjusted for prejudgment interest as well as for sums already recovered), the District Court specifically ordered Fumo to pay restitution to his three victims in the following amounts: (1) $1,413,819.05 to the State Senate; (2) $792,802.42 to Citizens Alliance; and (3) $134,217.99 to ISM. Ruth Arnao, a former Fumo aide and director of Citizens Alliance, likewise was convicted on 45 counts of fraud, tax evasion, and obstruction of justice, and she was sentenced to serve a year and a day in prison and 3 years of supervised release. In addition to a $45,000 fine and a $4,500 special assessment, the District Court ordered her to pay $792,802.42 in restitution to Citizens Alliance. Both Fumo and Arnao were required to pay the Citizens Alliance restitution "jointly and severally." United States v. Fumo, 655 F.3d 288, 302 (3d Cir. 2011).

The government and Fumo appealed, and they both raised a multitude of arguments for our consideration. We ultimately disposed of this first round of appeals in a lengthy opinion dated August 23, 2011 (and amended on September 15, 2011). We began by observing that, "[f]or the following reasons, we will affirm Fumo's conviction, vacate the sentences of Fumo and Arnao, and remand both for resentencing before the District Court." Id. at 294. We similarly concluded the entire opinion with the following sentence: "For the foregoing reasons, we affirm Fumo's conviction, vacate the sentences

3

of both Fumo and Arnao, and remand for further proceedings not inconsistent with this opinion." Id. at 324.

The government specifically disputed "a number of the calculations that went into the District Court's determination of the loss attributable to Fumo's fraud." Id. at 309. "Ultimately, the District Court's decisions resulted in a loss calculation for Fumo which fell just short of $2.5 million, the threshold for increasing the offense level" under the Guidelines. Id. We determined that the District Court committed reversible error with respect to some of these calculations. In turn, Fumo challenged "one aspect of his sentence, raising two arguments for why prejudgment interest on the restitution awarded was an abuse of discretion." Id. at 319. Rejecting both of these arguments, we concluded our "**Prejudgment interest on the order of restitution**" discussion by stating that "[w]e will therefore affirm the order of restitution, including prejudgment interest." Id. at 319, 322.

On remand, the government asked the District Court to increase the restitution amounts "to more accurately reflect the loss calculation as recognized by the Third Circuit." (Gov't's App. at 199.) However, Fumo argued that the restitution issue was not even before the District Court because "the government did not raise the issue on appeal" and "the Third Circuit affirmed the restitution order, including the award of pre-judgment interest." (Id.) The District Court ultimately considered but rejected these two arguments as "not persuasive." (Id.) It then determined that "the total losses occasioned by Mr. Fumo's fraud with pre-judgment interest added are as follows: Fraud on the Senate,

4

2,517,274 dollars; fraud on Citizens Alliance, 1,566,528 dollars; fraud on the

Independence Seaport Museum, [135,010] dollars." (Id. at 200-01.)  These amounts

yielded a total "figure of 4,218,812 dollars." (Id.)  Over the prosecutor's objection, the

District Court determined that Fumo was liable for only half of the Citizens Alliance

restitution—or $783,264.  (Id. at 201.)  Ultimately, "the total figure of restitution will be

in the amount of 3,435,548 dollars." (Id. at 200.)  The District Court also increased

Fumo's term of imprisonment to 61 months and ordered him to perform community

service as a condition of his special release.

At Arnao's resentencing hearing, both the prosecutor and Arnao's own defense

counsel vigorously objected to the District Court's apportionment of the Citizens Alliance

restitution.  The District Court nevertheless reaffirmed its determination to require each

co-Defendant to pay half of the restitution owed to this victim.

## II.

We begin with Fumo's theory that the District Court exceeded the scope of this

Court's own mandate by increasing the restitution amounts on remand.[1]  The District

Court properly observed that, even though the government objected to the restitution

order (as part of its loss calculation arguments), "the Third Circuit only considered

---

[1]   The District Court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

The District Court's interpretation and application of our own mandate is subject to plenary review.  See, e.g., Kilbarr Corp. v. Bus. Sys. Inc., 990 F.2d 83, 87-88 (3d Cir. 1993).  On the other hand, the parties agree that we must review the District Court's apportionment of the Citizens Alliance restitution under an abuse of discretion standard.

restitution in the context of Mr. Fumo's argument as to the award of pre-interest judgment (sic) on the restitution amount." (Gov't's App. at 200 (alteration in original).)  Our statement about affirming the restitution order expressly referenced this prejudgment interest issue, and it actually appeared at the end of a section entitled "**Prejudgment interest on the order of restitution**," in which we rejected Fumo's own arguments against any award of prejudgment interest.  Fumo, 655 F.3d at 319-21.  In contrast, we did determine in this prior opinion that the District Court committed a number of reversible errors in its loss calculations under the Guidelines.  As the District Court observed, "given the fact that the Third Circuit clearly found my loss fraud calculation to be erroneous, and given the fact that my restitution award was based on those now erroneous fraud loss calculations, it would be surprising if they had so explicitly affirmed the restitution order."  (Gov't's App. at 200.)

Under these circumstances, the District Court satisfied its obligation to "'implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'"  Kilbarr, 990 F.2d at 87-88 (quoting Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985)).  After all, we expressly affirmed Fumo's conviction, vacated both his sentence and the sentence of Arnao, and (rather generally) remanded for resentencing and for further proceedings not inconsistent with our opinion.  The District Court also appropriately turned to the well-established "sentencing package" doctrine to support its approach to the restitution amounts on remand.  See, e.g., Pepper v. United States, 131 S. Ct. 1229, 1251 (2011)

6

("Because a district court's 'original sentencing intent may be undermined by altering one portion of the calculus,' an appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" (citations omitted) (alterations in original)).

We now turn to the government's challenge to the District Court's apportionment of the Citizens Alliance restitution.[2]  The Mandatory Victims Restitution Act ("MVRA") includes a specific provision for cases involving more than one defendant:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h).  An important purpose of the MVRA as well as the Victim and Witness Protection Act ("VWPA") "'is to ensure that wrongdoers, to the degree possible,

---

[2]  We further note that the government's abandonment of its appeal from the District Court's resentencing of Arnao does not have any substantial effect on our present discussion.  In short, it would make no practical difference to the current appellate proceeding whether or not Arnao was ordered to pay a particular share of the Citizens Alliance restitution, or even was held jointly and severally liable for the entire amount. The government appropriately notes that there was no real point in pursuing the Arnao appeal because she could not even pay the share apportioned to her by the District Court. The government also points out that, if Fumo was ultimately ordered to pay the entire amount (and thereby held jointly and severally liable as to Arnao's own share), Arnao then would be relieved of meeting her existing obligation because the money would immediately be collected from Fumo.  In fact, Fumo himself defends the District Court's apportionment on the grounds that, "[i]f joint and several liability had been imposed again, as it was at the original sentencing, then all the the [sic] money would have been collected from Mr. Fumo and none paid by Ms. Arnao, as Judge Buckwalter well understood." (Fumo's Second-Step Br. at 36 (citation omitted).)

make their victims whole.'"  Fumo, 655 F.3d at 321 (quoting United States v. Rochester, 898 F.2d 971, 983 (5th Cir. 1990)); see also, e.g., United States v. Simmonds, 235 F.3d 826, 830-31, 833 (3d Cir. 2000).

Based on the statutory language, the MVRA contemplates two factors:  culpability and ability to pay.  With respect to the first MVRA factor, the District Court repeatedly indicated that Fumo and Arnao were "equally" culpable.  It stated at the end of Fumo's own resentencing hearing that "I think the area of culpability here is equal." (Gov't's App. at 201.)  At the subsequent resentencing hearing held for Arnao, the District Court likewise found that, "from the testimony[,] I heard that it's impossible to assess anything other than 50/50" and, while Arnao "may have been unduly influenced by Fumo," they were "both equally responsible for what happened down there at Citizens Alliance." (Id. at 218-19.)  We, however, conclude that these culpability findings had no real support in the record and that the District Court abused its discretion in its application of the initial statutory factor.

The government provides an extensive factual account of the respective roles played by the co-Defendants in the Citizens Alliance fraud.  In short, the evidence clearly established that Fumo initiated and directed the fraud.  For instance, Fumo testified at the trial that "I viewed it [Citizens Alliance] as my non-profit" and "my entity, my baby." (Gov't's App. in Prior Appeals at 4016.)  "I asked that Citizens' [sic] Alliance pay things and they did.  I did – and I expected them to." (Id. at 4170.)  While, among other things, the prosecutor stated at Arnao's resentencing hearing that the Citizens Alliance fraud

8

"wouldn't have happened without her" (Gov't's App. at 211), she actually functioned as a loyal aide carrying out the orders of her boss—the real mastermind behind the fraud itself. In other words, Arnao wrote out the checks, handled the paperwork, and performed similar tasks on Fumo's behalf and at his direction.

Given his dominant role, it is not surprising that the Citizens Alliance fraud largely benefited Fumo's own personal and political interests. As the government explains, Fumo reaped approximately 96% of the gains or benefits arising out of the fraud—while Arnao was left with the remaining 4%. The government then provides many examples of the benefits he obtained, such as $43,029.52 to purchase tools and similar items for his collection as well as $20,000 to finance a lawsuit against one of his own political rivals. In turn, it appears that "loss" and "gain" were identical in this case because the government itself only calculated actual loss and included only losses that were actually pocketed by the two co-Defendants.

With respect to the second "economic circumstances of each defendant" factor, the District Court stated at Fumo's resentencing hearing that Arnao "has the ability to pay and should." (Gov't's App. at 201.) In resentencing Arnao, it further explained that, while her financial resources "aren't anywhere near what Fumo's is [sic], I still think I'm going to impose upon you that burden to pay half the restitution, rather than making a [sic] joint and several liability." (Id. at 219.) We again conclude that the District Court abused its discretion.

The 2009 presentence investigation report ("PSR") showed that Fumo had a net

9

worth of $11,291,472.56, a monthly income totaling $88,757, and a net monthly cash flow of $43,994.72. Fumo accordingly has met all of the financial obligations imposed in this criminal case, paying, to date, more than $3 million (including the $783,264 he was ordered to pay as restitution to Citizens Alliance). Under the circumstances, he clearly possesses the means to pay the remaining share of the Citizens Alliance apportioned to Arnao by the District Court—and to do so immediately. In fact, Fumo defends the District Court's apportionment on the basis that, if he had been made jointly and severally liable for the full amount, Arnao would not bear any of the burden of repaying the victim because all of the money would have been promptly collected from Fumo himself.

Arnao's own PSR indicated that Arnao and Mitchell Rubin, her husband, had a net worth of $1,454,581 (a figure including Arnao's separate ownership of a pension worth $76,536, as well as jewelry valued at $41,500). She then had a monthly income from her salary of $3,208, while her husband earned $72,833 per month from his own salary and business income. The couple ultimately possessed a net monthly cash flow of $47,188. Although certainly not destitute, Arnao was obviously much less well off than her multi-millionaire co-Defendant. The government further points to the difficulties it faces in reaching joint assets and observes that the economic situation of Arnao and her husband has materially deteriorated since this PSR was prepared in 2009 (e.g., Arnao lost her state pension as a result of her criminal convictions).

The Probation Office proposed a payment schedule of $1,000 per month based on Arnao's current economic circumstances. On May 14, 2002, the District Court entered an

10

order amending the criminal penalties "to include that payment shall be due in monthly installments of no less than $1,000.00, pending further report by the U.S. Probation Office." (Gov't's Supp. App. at 5 (emphasis omitted).) At this approved rate, it will take more than 60 years for Arnao (who is in her late-50s) to pay her current share of the Citizens Alliance restitution. Simply put, this means that Citizens Alliance will never be reimbursed for its losses. Fumo, in contrast, could easily—and immediately—pay the remaining share of the restitution owed to this victim. In the end, the result reached by the District Court is inconsistent with an important purpose of restitution itself—to ensure that, to the extent possible, victims are made whole. See, e.g., Fumo, 655 F.3d at 321.

We therefore determine that the District Court abused its discretion under the MVRA. The government asks us to direct the District Court to impose on Fumo the obligation to pay full restitution to Citizens Alliance (and thereby be held jointly and severally liable for Arnao's own share). Given the deferential nature of our standard of review, we will refrain from doing so. We will instead adopt a less drastic alternative suggested by the government. Accordingly, the District Court's sentence will be vacated insofar as it ordered Fumo to pay only half of the restitution owed to Citizens Alliance. We will then remand this matter to the District Court with specific instructions to determine Fumo's share of the Citizens Alliance restitution on the basis of the applicable statutory factors as well as the actual evidence in this case. However, we add that, given the evidence, the District Court would—yet again—abuse its discretion if it failed either: (1) to order Fumo to pay all of the Citizens Alliance restitution; or (2) at the very least, to

11

apportion Fumo's share of the restitution in such a way as to reflect the clearly disproportionate culpability and economic circumstances of the two co-Defendants and to ensure that, to the extent possible, Citizens Alliance itself will be made whole. It is also undisputed that the District Court erroneously included prejudgment interest on restitution that Fumo had already paid prior to the resentencing date. Accordingly, the District Court's sentence will be vacated as to the calculation of prejudgment interest, and we will remand with specific instructions to make a proper prejudgment interest calculation.

III.

For the foregoing reasons, the criminal sentence entered by the District Court will be affirmed in part and vacated in part. We will affirm the sentence insofar as it increased the restitution amounts that Fumo was required to pay to his victims. We will vacate the sentence insofar as it ordered Fumo to pay only half of the restitution owed to Citizens Alliance. We will also vacate the sentence as to the calculation of prejudgment interest. Finally, we will remand this matter to the District Court with specific instructions to determine Fumo's share of the Citizens Alliance restitution on the basis of the applicable statutory factors as well as the actual evidence in this case and to make a proper prejudgment interest calculation.