**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kenneth Scott PEMBERTON,
Defendant–Appellant.**

No. 89–10341.

United States Court of Appeals,
Ninth Circuit.

Submitted May 17, 1990 *.

Decided May 31, 1990.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Victor M. Chavez, Asst. Federal Defender, Fresno, Cal., for defendant-appellant.

Carl Blackstone, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before SCHROEDER and CANBY, Circuit Judges, and REA **, District Judge.

CANBY, Circuit Judge:

Kenneth Scott Pemberton appeals from the 21–month prison sentence he received after his conviction for receiving stolen property, in violation of 18 U.S.C. § 662. He claims that the district court applied an erroneous measure of the value of the stolen goods, and therefore wrongly enhanced his offense level. We affirm.

## FACTS

A jury convicted Pemberton of receiving property that had been stolen from Paul Comstock, a landscape architect, while Comstock was on assignment in Yosemite National Park. Among the various items received by Pemberton were thirty technical drawings of landscape and irrigation designs for a 450–acre commercial development.

The district court sentenced Pemberton under the federal guidelines, which provide that the offense level for receiving stolen property is the sum of 4 base points and a number of enhancement points determined by the value of the property. *See* U.S.S.G. § 2B1.2(a), (b). According to a sworn declaration by Comstock, the drawings had been commissioned by a client of his employer for approximately $140,000, and were 80% complete when stolen.[1] Using these figures, the court valued the drawings at $118,400 (i.e., 80% of $140,000), and added 8 points to Pemberton's offense level score. *See* U.S.S.G. § 2B1.1(b)(1)(I). Thus, the final offense level was 12. Pemberton's prior record placed him in criminal history category III. The result was a recommended sentence of 15 to 21 months' imprisonment. The district court imposed a sentence of 21 months in prison and one year on supervised release.

Pemberton challenges only the district court's determination of his offense level. He claims that the court erred in valuing the drawings. For purposes of offense level enhancement, according to Pemberton, the value of the drawings was zero: first, because they were worthless to him; and, second, because they were incomplete and therefore worthless to the client for whom they were being executed. We must show due deference to the court's choice of a measure by which to appraise the drawings. *See United States v. Wilson*, 900 F.2d 1350, 1356–57 (9th Cir.1990). We review the court's interpretation of the guidelines *de novo*, and its factual findings underlying the sentence for clear error. *See United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989); *United States v. Wills*, 881 F.2d 823, 825 (9th Cir.1989). Applying these standards, we reject Pemberton's claims and affirm the sentence.

## DISCUSSION

■ The district court did not err by valuing the drawings at $118,400, and adding 8 points to Pemberton's offense score. The "Application Notes" to § 2B1.2 provid-

---

** The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

1. The price figure is approximate because the contract between the developer and Comstock's employer covered several projects and did not specify what portion of the total contract price related to the drawings. Comstock's declaration also stated that replacing the drawings would have cost his employer at least $65,000, and that the mylar sheets on which the drawings were executed were worth at least $1,200. Pemberton does not dispute the accuracy of Comstock's figures.

ed the court with considerable discretion in measuring the value of stolen property:

> Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.... The loss need not be determined with precision, and may be inferred from any reasonably reliable information available....

U.S.S.G. § 2B1.1, comment. (nn. 2, 3) (made applicable to § 2B1.2 by § 2B1.2, comment. (n. 2)). The district court acted within this discretion by valuing the drawings as it did. Being unique, the drawings were not fungible items for which there was a broad and active market. In the absence of such a market, which would have supplied a readily ascertainable price, the court acted reasonably in relying upon the contract between Comstock's employer and the developer, the only parties with an immediate interest in the drawings, as an indication of value.[2]

■ Pemberton argues that the district court should have appraised the drawings according to what they were worth *to him*—which was zero.[3] To support the underlying proposition that a defendant's gain should serve as the measure of value, Pemberton cites the following sentence from the guidelines commentary:

> *Background:* The value of property taken plays an important role in determining sentences for theft offenses, because it is an indicator of both the harm to the victim and the gain to the defendant.

U.S.S.G. § 2B1.1, comment. (backg'd).

This statement does not support Pemberton's contention. First, and most obviously, the sentence expresses the Commission's concern with *both* the defendant's gain *and* the victim's harm. Even if there were no application notes, and this statement were the only commentary to § 2B1.2, the district court would not have been compelled to measure the value of the drawings solely from Pemberton's perspective. Second, the remark cited by Pemberton does not countermand or undermine the application notes. Rather, it is—as its own label indicates—merely a "background" comment, and serves to explain why, as a general matter, the Commission took the value of the property that is stolen into account in setting penalties for the offense. As the application notes demonstrate, the Commission ultimately decided that the district court should be able to choose fair market value, replacement cost or some other measure, however imperfectly they might represent the defendant's gain in particular cases.

■ Pemberton also argues that the incomplete nature of the drawings rendered them worthless. We do not agree. Comstock's declaration allows for the possibility that some of the drawings would have been useful to the developer, even though not entirely finished. Moreover, since the developer may have been able to hire someone to do the final 20% of work, he might have been willing to pay 80% of the contract price for the drawings as they were at the time they were stolen. Given the information contained in the declaration, the district court did not clearly err in refusing to find that the drawings were worthless.

AFFIRMED.

---

**2.** Under the terms of the application note, the court's measure is defensible as either the suggested "fair market value" (although the drawings were a commodity for which there was only a single seller and a single buyer), or as a permissible alternative measure, chosen because the fair market value was difficult to ascertain.

**3.** Because the district court need not have appraised the drawings according to their value to Pemberton, we need not consider whether they were in fact worth nothing to him.