21 F.3d 1118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Joseph SILVA, Defendant-Appellant.
 No. 93-30109.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1994.
Decided April 14, 1994.
 
 Before: WRIGHT, TANG and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Silva pleaded guilty to interstate transportation of six stolen blank checks. He provided a codefendant (Hill) with other stolen checks. During sentencing, the court increased his base offense level by 12 levels under U.S.S.G. Sec. 2B1.2 because the total of all checks was more than $500,000. It refused to grant an additional one point reduction for timely acceptance of responsibility under U.S.S.G. Sec. 3E1.1(b)(2). He appeals his sentence. We affirm.
 
 
 3
 1. Base offense level.
 
 
 4
 We review de novo the application of the Sentencing Guidelines. United States v. Watt, 910 F.2d 587, 589 (9th Cir.1990). We review for clear error the court's factual findings. Id.
 
 
 5
 Silva argues that the district court should have considered only the $5,500 he received for supplying the stolen checks. This argument contradicts the Guidelines. See U.S.S.G. Sec. 2B1.1, comment. (n. 2) (1992) ("In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed."). The loss attributable to Silva was the loss that would have occurred had the checks been cashed. See also United States v. Pemberton, 904 F.2d 515, 517 (9th Cir.1990) (value of stolen property not limited by its worth to the defendant).
 
 
 6
 Silva says he did not act in concert with others to commit bank fraud. See U.S.S.G. Sec. 1B1.3(a)(1)(B) (defendant is liable for the reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity). He argues that he provided only blank checks to Hill, who paid him $5,500 in return.[1] He relies on the stipulation with the government that there was no evidence that he participated in filling out, presenting or attempting to cash any of the First American checks. He also says the conduct of Hill and his associates was not foreseeable.
 
 
 7
 Silva's reliance on the government's stipulation is misplaced. Ample evidence showed that Silva supplied the checks to Hill in furtherance of Hill's plan to defraud the banks. The actions of Hill and his associates were foreseeable to Silva. See Transcript, February 1, 1993, pp. 10-18.
 
 
 8
 In a recorded conversation, Hill instructed Silva to deposit two checks using the name Kevin Kwan. Three days later, Hill and Silva discussed the fact that Silva deposited only one check. But Hill also told Silva that "the money [$50,000] was available right now, and that he was desperately trying to get a hold of the individual who would be taking the money out of the account." Later that same day, Silva told Hill he had 3,000 "good" checks and talked about selling them by the box. He also indicated that he had been providing checks to Hill for the past five years.
 
 
 9
 The trial court did not clearly err in finding that Silva provided the First American checks to Hill so that Hill could defraud the banks. Silva could foresee Hill's conduct because he provided him with stolen checks for more than five years and on at least one occasion, made a deposit. The amount of the loss was also foreseeable.
 
 
 10
 2. Acceptance of responsibility.
 
 
 11
 We review for clear error the factual determination of whether a defendant has accepted responsibility. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990). We give great deference to the district court's determination. Id.
 
 
 12
 Silva argues that he saved the government from going to trial by pleading guilty before the prosecution's deadline. He says the government made "no showing that they had to prepare for trial in this case." His arguments fail.
 
 
 13
 The burden of proof was on Silva. See United States v. Avila, 905 F.2d 295, 297 (9th Cir.1990) (defendant has burden of proof where he or she seeks to lower the offense level). Merely because the government set a deadline for plea bargaining does not mean that it was able to avoid trial preparation. The purpose of the deadline was to encourage Silva to plead guilty. There is no evidence that the prosecution's deadline for pleading guilty was also the date that would allow it to avoid trial preparation. Other facts suggest that the plea did not cause the government to avoid trial preparation.
 
 
 14
 The court set a trial date. At Silva's first change of plea hearing on October 30, 1992, his attorney advised the court that a plea agreement had not yet been reached. The government then moved on November 17, 1992, to obtain a voice exemplar and full finger and hand prints. Presumably, this resulted from their difficulty in reaching a plea agreement and was in anticipation of trial. Not until November 30, 1992, at the second change of plea hearing more than six months after his indictment, did Silva plead guilty. In this context, there is no reason to conclude that the government did not have to prepare for trial.
 
 
 15
 Silva also fails to meet the second requirement of Sec. 3E1.1(b)(2), i.e., that his plea permitted the court to allocate its resources efficiently. He offers no evidence. A plea agreement that comes six months after indictment in a case involving multiple defendants that the court has twice declared complex, does little to help the court allocate its resources efficiently. The conduct qualifying for a decrease under subsection (b) should "occur particularly early in the case." U.S.S.G. Sec. 3E1.1, comment. (n. 6). Requiring the court to schedule a second change of plea hearing also weighs against Silva.
 
 
 16
 He argues that the court penalized him for objecting to findings in his presentence report about relevant conduct and his role in the offense. See United States v. LaPierre, 998 F.2d 1460, 1467 (9th Cir.1993) (under Sec. 3E1.1 sentencing court cannot penalize defendant for exercising constitutional or statutory rights). But the judge said only there was no evidence to support a further one level reduction under Sec. 3E1.1(b). Because Silva offered little or no evidence, the court did not err.
 
 
 17
 In sum, the delay in pleading guilty was because Silva negotiated a hard plea bargain. That was his choice. It would be inconsistent with the purpose of Sec. 3E1.1(b), however, to allow a further one level reduction under such circumstances. The fact that Sec. 3E1.1 forces a defendant to make a difficult choice does not infringe on his constitutional rights. United States v. Davis, 960 F.2d 820, 829 (9th Cir.1992).
 
 
 18
 AFFIRMED.
 
 
 19
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 20
 I agree with my colleagues that the district court properly increased the base offense level as a result of calculating the losses attributable to the defendant's actions. However, I believe that it is clear that the defendant was entitled to an additional reduction of one level because his acceptance of responsibility was timely under Section 3E1.1(b)(2). The government conceded at oral argument that the only preparation for trial reflected in the record before us was a motion that took no more than five minutes to prepare. Moreover, the defendant notified the government of his intention to plead well before the deadline given him by the prosecution. Finally, the timing of the defendant's plea in no way affected the court's scheduling arrangements because, at the time of the plea, a motion filed by a co-defendant for a continuance of the trial, which ultimately was granted, was pending. Thus, the timing of defendant's plea in no way affected the district court's ability to allocate its resources efficiently. Accordingly, in my opinion, the court erred in failing to grant an additional one-level reduction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Hill paid Silva $500 for six checks drawn on the account of M.W. Burton, Inc. and $5,000 for checks drawn on the account of First American Title Insurance Company. Silva's guilty plea named only the M.W. Burton checks