[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/27/99
THOMAS  K. KAHN
CLERK

No.  98-8385

D. C. Docket No.  5:97-CR-19-WDO


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC ANTHONY SHUGART,

Defendant-Appellant.


No.  98-8386

D.C. Docket No.  5:97-CR-19-WDO


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRENT PATTERSON,

Defendant-Appellant.

No.  98-8387

D.C. Docket No.  5:97-CR-19-WDO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON WESLEY CANTRELL,

Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of Georgia

**(May 27, 1999)**

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

DUBINA, Circuit Judge:

These consolidated criminal cases present an interesting sentencing issue that is one of first impression in this circuit. After reviewing the record and having the benefit of oral argument, we affirm the defendants' sentences.

## I.  BACKGROUND

On February 22, 1997, appellants Eric Anthony Shugart, Brent Patterson, and Jason Wesley Cantrell ("the defendants") set fire to the century-old Oak Grove Methodist Episcopal Church (the "Church") in Elko, Georgia. The Church burned to the ground.

A grand jury charged the defendants with conspiracy to commit arson, in violation of 18 U.S.C. § 371 (Count I), as well as with substantive violations of the arson statute, 18 U.S.C. § 844(i), and aiding and abetting in the commission of an offense against the United States, in violation of 18 U.S.C. § 2 (Count II). After the government presented its case to a jury, the defendants pled guilty to Count I. The court then dismissed Count II on the government's motion.

In addition to sentencing the defendants to terms of imprisonment, the district court ordered the defendants, jointly and severally, to pay restitution in the amount of $116,280. The defendants appeal this portion of their sentences.

## II.  DISCUSSION

The defendants present two arguments on appeal. First, they submit that the district court abused its discretion under 18 U.S.C. § 3663A when it ordered them to pay restitution in an amount equal to the cost of rebuilding the Church using modern construction methods and materials. Section 3663A, they urge, limits the amount the district court can award in restitution to the actual cash value of the Church on the date of the offense. Second, they argue that even if

3

§ 3663A permits a restitution order based on replacement cost, the district court clearly erred in finding that $116,280 is the cost of rebuilding the Church.

Our analysis of the district court's restitution order involves three standards of review. First, whether the term "value" in § 3663A contemplates a restitution order based on replacement cost instead of fair market value is a legal question, which we review *de novo*. *See United States v. Davis*, 117 F.3d 459, 462 (11th Cir.), *cert. denied sub nom. Morfa v. United States*, 118 S. Ct. 355 (1997). Second, if § 3663A does permit a restitution order based on replacement cost, we review the district court's use of replacement cost in this case for abuse of discretion. *See United States v. Twitty*, 107 F.3d 1482, 1493 (11th Cir. 1997). Finally, we review for clear error the district court's factual finding that it will cost $116,280 to rebuild the Church. *See United States v. Bourne*, 130 F.3d 1444, 1446 (11th Cir. 1997).

Section 3663A(b)(1) requires the defendants to pay restitution in an amount equal to the "value" of the Church on the day they burned it down. For fungible commodities, value is easy to determine: it's the actual cash value, or fair market value, of the item — that is, "[t]he fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business." *Black's Law Dictionary* 35 (6th ed. 1990). According to the defendants, § 3663A *always* limits restitution to actual cash value. *See Appellants' Brief* at 7. We disagree.

Although fair market value will often be an accurate measure of the value of property, it will not always be so. Where actual cash value is difficult to ascertain — because an item is unique, or because there is not a broad and active market for it — replacement cost may be a better measure of value. The Sentencing Guidelines, for instance, when specifying how to determine the value of stolen property for purposes of calculating the appropriate number of

4

points to add to a defendant's base offense level, allow that replacement cost may be used to value items for which market value is "difficult to ascertain or inadequate to measure harm to the victim." U.S.S.G. § 2B1.1, application note 2; *see also United States v. Pemberton*, 904 F.2d 515, 516-17 & n.2 (9th Cir. 1990).

We conclude that "value," as § 3663A uses that term, contemplates a restitution order based on replacement cost where actual cash value is unavailable or unreliable. Whether actual cash value is unavailable or unreliable is an issue of fact, and a district court's decision to use replacement cost is a matter of discretion.

In our view, the district court in this case did not abuse its discretion in ordering restitution in an amount necessary to rebuild the Church. A church is not a fungible commodity. *See* James C. Bonbright, *The Valuation of Property* 66, 419 (1937) (noting that a church is a "[h]ighly unmarketable institutional propert[y]"). A congregation rarely sells its church so that its members can relocate to a new city or a new neighborhood. A church is unique, and is valued by its members, precisely because of its location, its design, and the memories it evokes. None of these characteristics can be recreated by purchasing an alternate structure in another city or neighborhood, even if such a structure were available. In sum, actual cash value is not, in our view, an appropriate measure of value in this case. We conclude that the district court properly determined that the only effective way to return to the victims the fair equivalent of what they lost is to rebuild a church comparable in size and design on the same lot where the original church stood. This is the only result that even comes close to returning to the victims what they had before February 22, 1997.

5

The rule of lenity does not affect our conclusion. The defendants argue that lenity requires us to adopt their interpretation of the word "value" because it is ambiguous. We disagree. We only invoke the rule of lenity when, after considering the structure and purpose of a criminal statute, we are left with nothing more than a guess as to what Congress intended. *See United States v. Wells*, 117 S. Ct. 921, 931 (1997). In this case, we see no "grievous ambiguity" sufficient to require application of the rule of lenity. *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)).

Finally, the defendants argue that the district court erred in determining that the replacement cost of the Church was $116,280. This contention is without merit. Robert Tuggle, the sole witness called to establish the replacement cost of the Oak Grove Church, testified that the "actual replacement cost" of the Church, using "modern construction techniques," was $116,280. He also testified that the method and figures he used to estimate the replacement cost were the ones generally used in the insurance industry to tell what it will cost to reconstruct a building. In our view, this testimony amply supports the district court's finding.

For the foregoing reasons, we affirm the district court's restitution order and the defendants' sentences.

**AFFIRMED.**