[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16665
Non-Argument Calendar

_____

D. C. Docket No. 04-20187-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO SALVIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 9, 2006)**

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Roberto Salvia appeals his 18 month-sentence for conspiracy to steal

computer components of value in excess of $1,000, in violation of 18 U.S.C.

§ 659, and restitution order in the amount of $536,302.35. Salvia raises four

arguments and we address each in turn.

## I.

First, Salvia argues that the district court erred in ordering restitution when

the plea agreement and the indictment did not mention restitution. Salvia contends

that the court's determination of restitution in excess of $500,000 prevented him

from entering a knowing and voluntary plea because the restitution amount

resulted in a 12-level sentence enhancement. Salvia argues that the restitution

should be struck because it was not contemplated within the parties' understanding

in the plea agreement, or, alternatively, he should only be held responsible for an

amount between $1,000 and $2,000.

The taking of a guilty plea is governed by Rule 11. Fed. R. Crim. P. 11. We

review a Rule 11 violation for plain error when, as here, the defendant did not raise

any Rule 11 issue before the district court. United States v. James, 210 F.3d 1342,

1343 (11th Cir. 2000). Any error must be plain, affect substantial rights and

seriously implicate the fairness, integrity, or public reputation of judicial

proceedings. United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001). Rule

11 enumerates several requirements of the district court before accepting a guilty

2

plea, including informing the defendant of "the court's authority to order restitution." Fed. R. Cim. P. 11(b)(1)(K). Rule 11 further states that "a variance from the requirements of this rule is harmless error if it does not affect substantial rights." Fed. R. Cim. P. 11(h).

We traditionally have assumed reversible plain error was shown when the district court failed entirely to address a core Rule 11 concern, which includes ensuring that: (1) the guilty plea is voluntary; (2) the defendant understands the nature of the charges; and (3) the defendant understands the consequences of his plea. United States v. Bell, 776 F.2d 965, 968 (11th Cir. 1985). Recently, the Supreme Court formulated the standard for determining whether a Rule 11 error affects a defendant's substantial rights, holding that:

> a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea. A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding.

United States v. Dominguez Benitez, 542 U.S. 74, ___, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004). Under this standard, we must examine the entire proceedings, not just the plea hearing, to assess the effect of the Rule 11 error on the defendant's decision to plead. Id. at ____, 124 S.Ct. at 2338-41.

Assuming arguendo that Salvia is not otherwise procedurally barred from challenging the district court's action in this respect,[1] Salvia cannot demonstrate that the court committed reversible plain error. As the government concedes, the district court's failure to inform Salvia at the plea hearing of the court's ability to impose a restitution order violated the requirement of Rule 11 and constituted error that was plain. See United States v. Morris, 286 F.3d 1291, 1293-94 (11th Cir. 2002) (holding that the court erred in failing to inform the defendant that it could impose restitution but that the error did not affect the defendant's substantial rights because the court informed the defendant that it could impose a maximum fine of an amount higher than the restitution amount imposed).

Salvia, however, cannot demonstrate that this error affected his substantial rights. Although he was not expressly informed in the plea agreement or at the plea hearing that restitution may be imposed, the Presentence Investigation Report ("PSI") stated that 18 U.S.C. § 3663A and the guidelines required that restitution be ordered. Salvia filed written objections to the restitution amount and to the PSI's determination of his ability to pay restitution, but did not contest the fact that

---

[1] Because the government did not refer expressly to the invited error doctrine, we express no opinion as to whether Salvia's statement in his objections to the PSI that "we respectfully request this Court order restitution" bars him from challenging the district court's restitution order. See United States v. Silvestri, 409 F.3d 1311, 1327-28 (11th Cir. 2005) (stating that "a party may not challenge as error a ruling or other trial proceeding invited by that party").

restitution should be awarded. In fact, Salvia stated "we respectfully request this Court order restitution but defer as to the amount of restitution to be paid."

Furthermore, at sentencing, Salvia argued extensively about the calculation of the amount of loss and restitution, but stated that "we concede that there should be a restitution amount," and later clarified that he was "not asking to avoid the restitution altogether." After the court stated that it was "obligated under the recent case law to set a restitution amount," Salvia's counsel stated that he was "confident that the Court has to order restitution at this time." These comments clearly indicate that Salvia knew before and during sentencing that the court could order restitution, and that Salvia even conceded that the court should order restitution. With this knowledge, Salvia never attempted to withdraw his guilty plea before sentencing, and still has not attempted to withdraw his plea.[2] Despite the evidence in the record that Salvia was aware of the court's authority to order restitution and the fact that he bears the burden of proof under the plain error standard, Salvia has not pointed to any evidence in the record demonstrating that he would not have entered a guilty plea but for the court's Rule 11 error. Thus, Salvia's substantial rights were not affected by the court's error and there is no reversible plain error.

---

[2] He also did not ask the district court to rescind its acceptance of the plea agreement. See United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (stating that a district court's acceptance or rejection of a plea agreement is not final until after the court has had the opportunity to consider the PSI).

## II.

Next, Salvia argues that his enhanced sentence based on judicial fact findings regarding the amount of loss and restitution violates United States v. Booker, 543 U.S. ___, 125 S.Ct. 738,160 L.Ed.2d 621 (2005). Salvia argues that this error was not harmless because it increased his term of imprisonment and created a financial obligation of over $500,000. Salvia contends that the district court mistakenly believed that the determination of the amount of loss would not affect his sentence.

Because Salvia did not object to his sentence under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), or raise any other similar constitutional objection to judicial fact finding at the district court, we review for plain error. United States v. Dowling, 403 F.3d 1242, 1246 (11th Cir. 2005). We "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005) (quotations and citations omitted).

In Apprendi v. New Jersey, 530 U.S. 224, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. at 2362-63. The Supreme Court revisited Apprendi in Blakely and clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ____, 124 S.Ct. at 2537 (emphasis added).

In Booker, issued after Salvia was sentenced, the Supreme Court held that the holding in Blakely applies to the federal sentencing guidelines. Booker, 543 U.S. at ____, 125 S.Ct. at 755. Thus, the Sixth Amendment is violated by the imposition of an enhanced sentence under the guidelines, at least with respect to imprisonment, based on the sentencing judge's determination of a fact that was not found by the jury or admitted by the defendant. Id. at ____, 125 S.Ct. at 750-51. The Sixth Amendment is implicated due to the mandatory nature of the guidelines that imposes binding requirements on sentencing judges. Id. The Supreme Court

7

remedied the constitutional issue by excising the provision of the federal sentencing statute that made the guidelines mandatory, rendering the guidelines an advisory regime. See id. at _____, 125 S.Ct. at 756-57.

Under Booker, there are two types of sentencing errors: constitutional and statutory. A constitutional error is "the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge; the error is the mandatory nature of the guidelines once the guidelines range has been determined." United States v. Shelton, 400 F.3d 1325, 1331 (11th Cir. 2005). A statutory or non-constitutional error occurs when a district court judge sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment violation." Id. at 1330-31.

The right to appeal a sentence on Blakely or Booker grounds may be waived in a plea agreement. United States v. Grinard-Henry, 399 F.3d 1294, 1297 (11th Cir.), cert. denied, 125 S.Ct. 2279 (2005). We will enforce a sentence-appeal waiver contained in a plea agreement where the government demonstrates either that: "(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." United States v. Benitez-Zapata, 131 F.3d 1444, 1446 (11th Cir. 1997). Whether a defendant

knowing and voluntary waived his right to appeal a sentence is a question of law reviewed de novo. United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993).

To the extent that Salvia is raising a Booker challenge to the restitution award, this award would not constitute plain error. We have stated that a restitution order, even if it constituted error under Booker, cannot be "plain" because neither we nor the Supreme Court have addressed whether Booker applies to restitution orders, and other circuits are split on the question. United States v. King, 414 F.3d 1329, 1330 (11th Cir. 2005). Thus, any challenge to the court's restitution order under Booker fails the plain error standard.

With regard to Salvia's challenge to his imprisonment term, we find that he waived any constitutional error argument under Booker. Salvia's plea agreement stated that "Defendant waives any constitutional challenge to the Sentencing Guidelines, waives indictment and trial by jury on all findings relevant to sentencing, and agrees that the Court may make all such findings by a preponderance of the evidence based on any reliable evidence, including hearsay." At the change of plea hearing, the court noted that Salvia's plea agreement waived any constitutional challenge to the federal sentencing guidelines under Blakely, and Salvia acknowledged that he was satisfied with the waiver. Because the district court discussed and explained the waiver at the plea agreement, we find

that the waiver is enforceable and that Salvia waived any right to raise a constitutional challenge to his sentence under Booker.

Although we have not previously considered whether a waiver of the right to raise a constitutional challenge under the guidelines also waives the right to raise a challenge of Booker statutory error, it is unnecessary to decide this issue here because the district court did not commit reversible Booker statutory error. The court committed error that was plain by sentencing Salvia pursuant to a mandatory guideline scheme. See United States v. Dacus, 408 F.3d 686, 689 (11th Cir. 2005).

But Salvia cannot satisfy the third prong of plain error review for this argument. In applying the third prong, we ask "whether there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." Id. at 1300. The record here does not demonstrate a reasonable probability that the court would have imposed a different sentence if the guidelines were advisory. Salvia only points to the following exchange between the court and Salvia's counsel in arguing that the court erroneously believed that the loss amount had no affect on his sentence and suggesting that the court may have imposed a different sentence:

> THE COURT:    Let me ask you, you have made the objections and
>               I will rule on them, but none of this makes any
>               difference to his sentence, does it, assuming I
>               follow the plea agreement?

10

MR. BELL:          That's right, Your honor.  We didn't - - I'll leave it at that then.

THE COURT:          Okay, I just wanted to make sure.  There seems to be a lot of heat surrounding this issue.  I'm trying to figure out why.

MR. BELL:          We thought it was an attempt to make our client look more culpable than he is, while we admit he's certainly very culpable, but I'll move on.

This exchange occurred following the government's questioning of a witness concerning whether Salvia obtained the house where the stolen goods were brought and found the person who was going to buy the goods.  As demonstrated by Salvia's counsel at the end of the quotation above, this testimony was relevant to Salvia's role in the offense, not to the value of the goods.  Furthermore, the court was correct that this issue was irrelevant if it followed the plea agreement because the agreement clearly states that the government would not recommend a role enhancement.  The court ultimately adopted the PSI, which did not apply a role enhancement, and sentenced Salvia to the minimum sentence under the guidelines.  The sentencing transcript reveals no other comments suggesting that the district court felt that the sentence under the guidelines was too severe or that it would have imposed a different sentence if the guidelines were advisory.  Therefore, Salvia has failed to satisfy the third prong of the plain error test with respect to Booker error.

**III**.

Salvia also contests the district court's calculation of the amount of loss under the guidelines on the grounds that the court should have used the cost of replacement to determine the amount of loss and that the invoices from Intel, the company whose goods were stolen, were inadequate because they listed the same products at different prices.

We review the district court's interpretation and application of the sentencing guidelines de novo, and the loss calculation for clear error. United States v. Machado, 333 F.3d 1225, 1227 (11th Cir. 2003).

The commentary to U.S.S.G. § 2B1.1, which establishes the offense level for theft, in the 1998 Guidelines manual, states that:

> "Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

U.S.S.G. § 2B1.1, cmt. n.2. We have observed that the fair market value, for purposes of U.S.S.G. § 2B1.1, "does not refer to one uniform measure, such as the retail value, but rather the market in which the property was in at the time of the offense." Machado, 333 F.3d at 1227-28. We have also stated that "[t]he market value of stolen property is the price a willing buyer would pay a willing seller

12

either at the time and the place that the property was stolen or at any time during the receipt or concealment of the property." United States v. Robinson, 687 F.2d 359, 360 (11th Cir. 1982).

The district court interpreted the instructions in Machado to look to the "market in which the property was in at the time of the offense" to be equivalent to looking at what a willing buyer would pay a willing seller. The court determined that the invoices provided evidence of the fair market value of the goods. The court rejected Salvia's request to calculate the value of the goods using the cost of replacement as unworkable for a "high-tech product" like those at issue here because of the problem of valuing intellectual property. The invoices provided clear evidence of what a willing buyer would truly pay a willing seller for the items in question. Even though the invoices appear to list some of the products at different unit prices for different buyers, the invoices still reflect what those particular buyers would pay for the specific goods. Furthermore, the guidelines commentary only suggests that other methods of valuation should be used if market value is "inadequate to measure harm to the victim." Even if the invoices reflect different prices for the same goods, they accurately measure the harm that Intel suffered here. Thus, the court did not err in using Intel's selling price to calculate the amount of loss or in its factual findings in calculating the amount of

13

loss.

## IV.

Finally, Salvia argues that the district court erred in using the Intel invoices to calculate the restitution amount because they listed products with the same name at different prices and there was no explanation offered for this discrepancy. Salvia further argues that the district court should have calculated the amount based on the cost to Intel of manufacturing replacement components.

We review a district court's restitution order for abuse of discretion. United States v. Twitty, 107 F.3d 1482, 1493 (11th Cir. 1997). We review for clear error the district court's factual findings in calculating the restitution amount. United States v. Shugart, 176 F.3d 1373, 1375 (11th Cir. 1999).

Under the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C. §§ 3613A, 3663A, a district court is required to order that a defendant convicted of an offense against property under Title 18 make restitution to the victim of the offense. 18 U.S.C. § 3663A(a)(1), (c). The guidelines also require a court to "enter a restitution for the full amount of the victim's loss" if such an order is authorized under § 3663A. U.S.S.G. § 5E1.1(a)(1).

Section 3663A specifies that an order of restitution shall require a defendant to pay "the greater of– (I) the value of the property on the date of the damage, loss,

or destruction; or (II) the value of the property on the date of sentencing."
18 U.S.C. § 3663A(b)(1)(B)(i). The government bears the burden of demonstrating the amount of the victim's loss by a preponderance of the evidence. See id. § 3664(e). We have held that "the preponderance standard must be applied in a practical, common-sense way. So long as the basis for reasonable approximation is at hand, difficulties in achieving exact measurements will not preclude a trial court from ordering restitution." United States v. Futrell, 209 F.3d 1286, 1292 (11th Cir. 2000). In defining "value" for purposes of restitution under 18 U.S.C. § 3663A, this Court has stated that "[f]or fungible commodities, value is easy to determine: it's the actual cash value, or fair market value, of the item–that is, the fair or reasonable cash price for which the property could be sold in the market in the ordinary course of business." Shugart, 176 F.3d at 1375 (quotations and citations omitted). Replacement cost may be used as the "value" figure where the actual cash value is unavailable or unreliable. Id.

The district court did not abuse its discretion in using the Intel invoices instead of the cost of replacement in calculating the restitution amount, or clearly err in calculating the restitution amount. The district court found that the invoices represented the fair price for which the property could be sold in the market under Shugart. Because the invoices were not discredited as unreliable, there is no

15

reason to use the replacement cost to determine "value." Although the invoices listed some identical products at different prices, this differential may reflect adjustments made by Intel to different companies based on purchaser identity, quantity of goods ordered, or other criteria. Regardless of the explanation for this discrepancy, it does not discredit the invoices as unreliable evidence because they in fact represent the prices that companies would pay for the products in question, and references to those prices by the district court did not constitute an abuse of discretion. Furthermore, the invoices at the very least constitute a "basis for reasonable approximation" of the value of the stolen goods under Futrell. Thus, the court did not clearly err in calculating the restitution amount.

**AFFIRMED.**