**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JESSE D. KAPLAN; DANIEL
JAMES STRYCHARSKE,
*Defendants-Appellants.*

Nos. 15-30213
15-30225

D.C. Nos.
2:14-cr-00232-JLR-3
2:14-cr-00232-JLR-2

OPINION

Appeal from the United States District Court
for the Western District of Washington,
James L. Robart, District Judge, Presiding

Argued and Submitted August 29, 2016
Seattle, Washington

Filed October 7, 2016

Before: Michael Daly Hawkins and M. Margaret
McKeown, Circuit Judges, and David A. Ezra,* District
Judge.

Opinion by Judge Ezra

---

* The Honorable David Alan Ezra, Senior United States District Judge for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed Jesse Kaplan's and Daniel Strycharske's sentences of imprisonment and the district court's award of restitution in a case in which an explosion during hash oil manufacturing engulfed an apartment building complex in flames and caused severe injuries and one death.

The panel held that district courts have discretion in calculating restitution, and that while fair market value generally provides the best measure to ensure restitution in the full amount of the victim's loss, replacement value is an appropriate measure of destroyed property under 18 U.S.C. § 3663A(b)(1)(B), where the fair market value is either difficult to determine or would otherwise be an inadequate or inferior measure of the value. The panel held that the district court did not abuse its discretion in using replacement value to calculate the value of destroyed personal belongings like clothes, furniture, and home appliances.

The panel held that the district court was not required to give additional notice of an upward departure, where the presentence report specifically put the defendants on notice that an upward departure may apply, and that the district court did not commit plain error where it upwardly departed only on grounds stated in the PSR. The panel held that Kaplan's 36-month sentence is substantively reasonable. The panel rejected Strycharske's contentions that the district court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

made clearly erroneous factual findings, made an inflammatory analogy that prejudiced his sentencing, and that his 36-month sentence is substantively unreasonable.

## COUNSEL

Ralph Hurvitz (argued), Seattle, Washington, for Defendant-Appellant Jesse D. Kaplan.

Scott J. Engelhard (argued), Seattle, Washington, for Defendant-Appellant Daniel James Strycharske.

Charlene Koski (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office; for Plaintiff-Appellee.

## OPINION

EZRA, Senior District Judge:

Appellants Jesse Kaplan ("Kaplan") and Daniel Strycharske ("Strycharske") appeal their 36-month sentence of imprisonment and final judgment of restitution in the amount of $2,771,929 on the ground that the district court erred by calculating the restitution award using replacement value instead of fair market value. We have jurisdiction under 28 U.S.C. § 1291.

We hold that district courts have discretion in calculating restitution, and that while fair market value generally provides the best measure to ensure restitution in the full amount of the victim's loss, "replacement value" is an

appropriate measure of destroyed property under 18 U.S.C. § 3663A(b)(1)(B) where the fair market value is either difficult to determine or would otherwise be an inadequate or inferior measure of the value. We affirm the sentences on all other grounds.

BACKGROUND

This case arises out of Appellants' quest to manufacture homemade hash oil and the tragic consequences of that quest. In the summer of 2013, Kaplan and Strycharske met David Shultz ("Shultz") at a marijuana festival where Shultz held himself out as knowledgeable about the hash oil manufacturing process. Appellants expressed interest in producing their own hash oil, so they invited Schultz to move into their apartment. Subsequently, Schultz and Appellants started making hash oil in the apartment. On November 5, 2013, butane fumes given off during the hash oil manufacturing process ignited and exploded. The blast blew out the apartment's exterior wall and engulfed significant portions of the building complex in flames. As a result of the explosion, six victims suffered severe injuries, and one victim later died due to complications arising out of her injuries.

On July 30, 2014, a grand jury returned a three-count indictment against the Appellants. Count 1 charged Endangering Human Life While Manufacturing Controlled Substances, in violation of 21 U.S.C. § 858 and 18 U.S.C. § 2; Count 2 charged Maintaining a Drug Involved Premises, in violation of 21 U.S.C. § 856(a)(1) and (b), and 18 U.S.C. § 2; and Count 3 charged Manufacturing Hash Oil and Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 846, and 18 U.S.C. § 2. The Appellants pled guilty and signed materially identical plea agreements.

At Kaplan's sentencing, the district court calculated his total offense level to be 17 and his criminal history category to be I . The resulting Guidelines range called for a sentence between 24 to 30 months' imprisonment. After calculating Kaplan's Guidelines range, the district court considered the § 3553(a) factors, but found that "an upward departure . . . is warranted under sentencing guideline ["USSG"] 5K2.0 [rather than a variance under the § 3553(a) factors], as the aggravating circumstances of the crime are not fully contemplated by the guidelines." Accordingly, the district court sentenced Kaplan to 36 months' imprisonment. Likewise, at Strycharske's sentencing the district court calculated his Guidelines range to be 24 to 30 months' imprisonment but sentenced him to 36 months' imprisonment by way of an upward departure pursuant to USSG § 5K2.0(a)(1)(A).

On October 15, 2015, the district court awarded restitution in the amount of $2,771,929. On appeal, Kaplan and Strycharke argue that the proper restitution amount is $2,731,929. They argue that the $40,000 difference reflects the district court's improper use of replacement value in calculating the value of certain items including clothing, furniture, and household appliances.

## DISCUSSION

A. *The Restitution Award*

How to measure the value of destroyed property when calculating a restitution award is a matter of first impression in this circuit.

We review de novo the legality of a restitution order and review for clear error the factual findings that support the order. *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014). If the restitution order "is within the bounds of the statutory framework, a restitution order is reviewed for abuse of discretion." *Id.* (internal quotation marks and citation omitted). Whether the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, authorizes a district court to measure property "value" using its replacement value goes to the legality of the restitution order itself and is a question of law; thus the standard of review is de novo.

"Fair market value" refers to "the price that a seller is willing to accept and a buyer is willing to pay on the open market." *Fair Market Value*, Black's Law Dictionary (10th ed. 2014); *United States v. Simmonds*, 235 F.3d 826, 830 (3d Cir. 2000) ("'Market value' refers to the actual price that the [property] in question would have commanded on the open market on the date of destruction."). "'Replacement value,' in contrast, refers to the amount of money necessary to replace the [property]." *Simmonds*, 235 F.3d at 830. In most cases, the replacement value is greater than the fair market value due to depreciation in value over time of many types of property. *Id.* at 830–31.

The MVRA requires a district court to order a defendant to make restitution to the victim of certain offenses. 18 U.S.C. § 3663A(a)(1). In situations where the return of property is "impossible," a district court shall order a defendant to "pay an amount equal to the greater of the value of the property on the date of the damage, loss, or destruction[,] or the value of the property on the date of sentencing, less [any offsets]." 18 U.S.C. § 3663A(b)(1)(B)(i)(I)–(II). However, the statute is silent

about *how* to value property. *United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006). What is clear, however, is that legislative history and case law demonstrates that the purpose of the MVRA is to fully compensate victims for their losses, and to restore victims to their original state prior to the criminal act. S. Rep. No. 104–179, at 12–13 (1996) *reprinted in* 1996 U.S.C.C.A.N. 924; *United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004) ("[W]e are presented with a statute[,] the primary goal and overarching goal of which is to make victims of crime *whole*, to *fully* compensate these victims.") (internal quotation marks and citation omitted). Indeed, the Supreme Court has stated "that the ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event." *Hughey v. United States*, 495 U.S. 411, 416 (1990). Guided by the remedial purposes underlying the MVRA, other circuits which have addressed this question have granted district courts a degree of flexibility in calculating the value of property when constructing an appropriate restitution award.

For example, the Third Circuit concluded that a district court did not abuse its discretion in calculating the value of the victims' furniture destroyed by a fire under § 3663A using "replacement value" rather than its "actual value." *Simmonds*, 235 F.3d at 832. The *Simmonds* court explained that "[w]hile there is no indication that the destroyed furniture in this case was 'unique,' furniture often has a personal value to its owners that cannot be captured or accurately estimated by simply determining the market value of the furniture." *Id.* The Third Circuit held that "when evaluating personal items of furniture in one's residence, we find that replacement value may be an appropriate measure of 'value' under § 3663A(b)(1). In these circumstances, the market value or

cash value is an inadequate or inferior measure of 'value.'" *Id.*

The Eleventh Circuit affirmed a district court's use of replacement value in determining the value of a burned-down church. *United States v. Shugart*, 176 F.3d 1373, 1376 (11th Cir. 1999). The *Shugart* court held that "'value,' as § 3663A uses that term, contemplates a restitution order based on replacement cost where actual cash value is unavailable or unreliable. Whether actual cash value is unavailable or unreliable is an issue of fact, and a district court's decision to use replacement cost is a matter of discretion." *Id.* at 1375. The Eleventh Circuit explained that "[f]or fungible commodities, value is easy to determine: it's the actual cash value, or fair market value, of the item." *Id.* However, "[a]lthough fair market value will often be an accurate measure of the value of property, it will not always be so. Where actual cash value is difficult to ascertain—because an item is unique, or because there is not a broad and active market for it—replacement cost may be a better measure of value." *Id.*

Two other circuit courts have explicitly adopted this approach. The Eighth Circuit held that

> in certain situations replacement value is the best measure of a victim's actual loss, particularly where the lost property is difficult to value. Conversely, in situations where the lost or damaged property is a fungible commodity with a viable market, we conclude replacement value is likely not appropriate because 'fair market value will . . . provide[] the most reliable measure of . . . the full loss.

*United States v. Frazier*, 651 F.3d 899, 908 (8th Cir. 2011) (remanding because district court did not make a factual finding as to whether the destroyed home was a unique asset with intangible value or whether it lacked a viable market (quoting *Boccagna*, 450 F.3d at 115) (alteration in original)). The Second Circuit has chosen to "decline to hold that, as a matter of law, district courts may only use fair market value in making the property calculations contemplated by 18 U.S.C. § 3663A(b)(1)(B)." *Boccagna*, 450 F.3d at 117. Two additional circuits have implicitly noted, but not directly held, that the MVRA permits multiple methods of calculating restitution. *United States v. Wilfong*, 551 F.3d 1182, 1184 n.2 (10th Cir. 2008) ("We do not hold that the cost to the victim is the only reasonable form of valuation. In some cases, replacement cost may be more appropriate."); *United States v. Gunselman*, 643 F. App'x 348, 356 (5th Cir. 2016) (noting that "other circuits have sanctioned the use of replacement cost when that measure appears best suited to make victims whole"). No circuit court has held differently.

This Court now joins our sister circuits in concluding that fair market value generally provides the best measure to ensure restitution in the "full amount" of the victim's loss, but that "replacement value" is an appropriate measure of destroyed property under § 3663A(b)(1)(B) where the fair market value is either difficult to determine or would otherwise be an inadequate or inferior measure of the value necessary to make the victim whole. Fair market value will almost always be an accurate measure of the value of a fungible commodity with a viable market, like precious metals, coffee, lumber, currency, wheat, or even marijuana. *See Fungible Goods*, Black's Law Dictionary (10th ed. 2014) (using coffee and grain as examples); *Gonzales v. Raich*, 545 U.S. 1, 18 (2005) (explaining that marijuana is "a

fungible commodity for which there is an established, albeit illegal, interstate market"); *Fungible*, Webster's II New Riverside Univ. Dictionary (1984) (using money and grain as examples). It is within the district court's discretion to determine the proper method of calculating the value of such property when ordering restitution pursuant to 18 U.S.C. § 3663A. However, the method chosen must comport with the congressional intent to make the victim whole. Accordingly, it would be an abuse of discretion for a district court to issue a restitution award that makes a victim more than whole, such as by awarding a windfall. Finally, the district court's determination of the actual value is a question of fact and should be reviewed for clear error. *See Shugart*, 176 F.3d at 1375.

This holding comports with the position on an analogous legal question: how district courts are to measure "loss" for calculating total offense levels at sentencing. *United States v. Pemberton*, 904 F.2d 515, 516–17 (9th Cir. 1990). While "calculating loss under the guidelines is not necessarily identical to loss calculation for purposes of restitution," *United States v. Hunter*, 618 F.3d 1062, 1065 (9th Cir. 2010), the two calculations are often based on similar figures. The application notes to USSG § 2B1.1, which dictates offense level enhancements for financial loss, states "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." USSG § 2B1.1 cmt. n.3(C). The application note further explains that in estimating loss, the sentencing court should use "the fair market value of the property unlawfully taken, copied, or destroyed; or if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property." *Id.* § 2B1.1 cmt. n.3(C)(i). For example, in *Pemberton*, this court affirmed a district

court's valuation of a drawing based on a "contract price" instead of its fair market value in calculating "loss" at sentencing. 904 F.2d at 517. The court explained,

> [t]he district court acted within its discretion by valuing the drawings as it did. Being unique, the drawings were not fungible items for which there was a broad and active market. In the absence of such a market, which would have supplied a readily ascertainable price, the court acted reasonably in relying upon the [contract].

*Id.* Similarly, the sentencing judge is in the unique position to assess the evidence and determine the nature and value of the property for which restitution will be paid. Where property is personal or unique, or neither fungible nor easily sold on a viable market, district courts should be permitted the discretion to make victims whole by determining an appropriate measure of value under the circumstances of the case before them.

Applying the holding to this case, it is clear that the district court did not abuse its discretion in using replacement value to calculate the value of destroyed personal belongings like clothes, furniture, and home appliances. The district court correctly focused its attention at the restitution hearing on making the victims whole, in furtherance of the congressional purpose of the MVRA. The district court found that the various pieces of property at issue were "very personal types of items," and that awarding the fair market value to purchase someone else's used personal items would not make the victim whole. Accordingly, the district court entered restitution in the amount of $2,771,929, which

reflected the use of replacement value.[1]  The district court's decision reflects this court's view that replacement value is preferred where fair market value would provide an "inadequate or inferior measure of the value necessary to make the victim whole."  Since the destroyed items were personal in nature, fair market value would not have adequately captured the destroyed items' intangible, and perhaps sentimental, value to the victims.[2]  Accordingly, the district court did not abuse its discretion in using replacement value to calculate restitution.

## B.  *The Individual Sentences of Imprisonment*

Both Appellants contend the district court committed a procedural error by failing to comply with Federal Rule of Criminal Procedure 32(h).  Because Kaplan and Strycharske failed to object at sentencing to the adequacy of notice, the standard of review is plain error.  *See United States v. Evans-Martinez*, 530 F.3d 1164, 1167 (9th Cir. 2008).

Federal Rule of Criminal Procedure 32(h) states:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the

---

[1] Only a small portion, approximately $40,000, of the restitution award involved the personal property items at issue on appeal.

[2] The Court notes that in addition to the difficulty in capturing the intangible and sentimental value of these types of possessions, that even if there is *some* type of Internet-based market for used property, the value varies widely depending on the seller, and it can be simply impracticable for the district court to ascertain which used piece of property most closely approximates the item lost by the victim.

> presentence report or in a party's prehearing
> submission, the court must give the parties
> reasonable notice that it is contemplating such
> a departure. The notice must specify any
> ground on which the court is contemplating a
> departure.

Fed. R. Crim. P. 32(h). "Under the plain language of the
Rule 32(h) . . . [t]he district court itself is required to give
notice of its intent to depart only when the PSR and the
parties' prehearing submissions fail to identify the ground for
departure." *United States v. Cruz-Perez*, 567 F.3d 1142, 1147
(9th Cir. 2009) (internal quotation marks and citation
omitted).

In this case, the PSRs filed for Kaplan and Strycharske
expressly indicated that factors may warrant a departure
pursuant to USSG § 5K2.0(a)(1)(A). Specifically, the PSRs
state that "death, serious bodily injury, and property
destruction was not contemplated in the advisory guideline
range." Accordingly, the district court was not required to
give additional notice because the PSR specifically put
Kaplan and Strycharske on notice that the court may apply an
upward departure. Their contention that the district court
upwardly departed on alternative grounds is without merit.
The record reflects that the district court articulated reasons
to upward vary pursuant to the § 3553(a) factors, but these
reasons did not form the basis for its upward departure.
Accordingly, since the district court upwardly departed only
on grounds stated in the PSR, the district court did not
commit plain error.

Kaplan further argues that the district court erred by
applying an upward departure pursuant to USSG § 5K2.0. In

this circuit, post-*Booker* departures may not form the basis of a procedural error. *United States v. Mohamed*, 459 F.3d 979, 987 (9th Cir. 2006). Instead, "[t]o the extent that a district court has framed its analysis in terms of a . . . departure, we will treat such so-called departures as an exercise of post-*Booker* discretion to sentence a defendant outside of the applicable guidelines range[, and that sentence] is subject to a unitary review for reasonableness." *Id.* The substantive reasonableness of a criminal sentence is reviewed for abuse of discretion. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

Here, Kaplan's sentence of 36 months imprisonment is substantively reasonable. The district court noted that the criminal conduct resulted "in several million dollars in property damage, a fatality, permanent and disabling and significant injuries, and interruption in the lives of a number of people who did nothing wrong other than to live in an apartment building that three individuals were misusing." As noted above, 21 U.S.C. § 858, the statute under which Kaplan pled guilty, includes as an element of the offense the "creat[ion of] a substantial risk of harm to human life." The creation of a risk is not the same thing as *actual harm*. Consequently, the sentence of 36 months is reasonable because Kaplan's criminal conduct resulted in significantly more than just the "creat[ion of] a substantial risk of harm to human life." 21 U.S.C. § 858. Instead, his conduct resulted in actual harm in the form of death and permanent injuries to a class of victims, and a sentence above the applicable range was necessary to account for behavior not considered by the statute or the Guidelines.

C.  *Strycharske's Individual Issues*

Strycharske argues that the district court made clearly erroneous findings of fact when it stated the apartment contained 64 cans of butane and that an open flame was involved.  Strycharske also argues that the district court made a highly inflammatory analogy that prejudiced his sentencing. Finally, Strycharske argues that his sentence is substantively unreasonable. This Court reviews findings of fact for clear error and the reasonableness of a sentence for abuse of discretion.  *United States v. Flores*, 802 F.3d 1028, 1047 (9th Cir. 2015); *United States v. Autery*, 555 F.3d 864, 871 (9th Cir. 2009).

It is undisputed that the apartment did not contain 64 cans of butane; yet, the district court did not make a factual finding to the contrary, nor rely on the quantity of butane containers when imposing the sentence.  Instead, the district court made the statement in the phrase of a question, one that Strycharske ultimately answered and corrected.  Nor did the district court commit clear error in finding that Strycharske acted with "wanton recklessness [by] having butane canisters actively involved around open flames."  While the factual basis of the plea agreement does not describe the existence of an "open flame," the fact that the butane gas was "ignited" strongly implies that a spark or a flame caused the explosion. Therefore, the district court did not commit clear error because it was not illogical, implausible, or without support in inferences drawn from the record that an "open flame" existed near the butane canisters at the moment of explosion.

Further, the district judge's "Bering Sea" analogy was neither extraneous nor inflammatory.   At sentencing, Strycharske argued that his sentence should reflect an

imprisonment range analogous to a drunk driving conviction. In response, the district court stated:

> I would suggest to you that closer analogy is when you've got a boat that you send up to the Bering Sea, and you weld the doors shut because it's going to increase the profitability of your voyage, and people die because it sinks. That's what I think this compares to.

The analogy's reflection of an individual's prioritization of profit at the expense of the safety of others finds support in the record; Strycharske admitted in his sentencing memorandum filed with the district court that he, Schultz, and Kaplan "discussed going into business together" to make hash oil. It was ultimately the pursuit of that business interest that led to the explosion. Finally, the "Bering Sea" analogy did not infect Strycharske's sentencing to the extent that it resulted in an unfair process or undermined the district court's application of the § 3553(a) factors. To the contrary, the district court's articulation of the § 3553(a) factors and ultimate upward departure pursuant to USSG § 5K2.0 demonstrates that the judge made "an individualized assessment," *Carty*, 520 F.3d at 994, that led the district court to impose a sentence of 36 months' imprisonment.

Finally, the district court did not abuse its discretion in sentencing Strycharske to an unreasonable imprisonment. The district court correctly calculated the applicable range, which called for imprisonment between 24 to 30 months. The district court fully articulated its reasons for an upward variance using the § 3553(a) factors. Specifically, the court noted that "what moves the court is the loss of life, the permanently-disabling and significant injuries that people

received . . . therefore, I take the nature and circumstances of the offense to be highly significant and serious." Despite giving detailed reasons to justify an above the guideline range sentence pursuant to the § 3553(a) factors, the district ultimately applied an upward departure "based upon the fact that the applicable sentencing guidelines did not consider the extreme harm done to the victims, including the total destruction of property, the permanent debilitating injuries, and the loss of life as a result of injuries received in the incident." Given these circumstances, the district court did not abuse its discretion in sentencing Strycharske to 36 months' imprisonment, six months above the applicable range.

For these reasons, we affirm the district court's sentences of imprisonment and award of restitution.

**AFFIRMED**.